[Cite as *Heffelfinger v. Heffelfinger*, 2026-Ohio-2780.]

## IN THE OHIO COURT OF APPEALS
### FIFTH APPELLATE DISTRICT
### ASHLAND COUNTY, OHIO

| | |
|---|---|
| PHYLLIS M. HEFFELFINGER | Case No. 25-COA-033 |
| Plaintiff - Appellant | Opinion And Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 23-DIV-037 |
| DOUGLAS K. HEFFELFINGER | |
| Defendant - Appellee | Judgment: Affirmed |
| | Date of Judgment Entry: July 20, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Robert G. Montgomery, Judges

**APPEARANCES:** JAMES M. RICHARD, for Plaintiff-Appellant; TODD E. CHEEK, for Defendant-Appellee.


*King, P.J.*

{¶ 1}  Plaintiff-Appellant, Phyllis M. Heffelfinger ("Wife"), appeals the October 28, 2025 judgment entry – decree of divorce of the Ashland County Domestic Relations Court, dividing property belonging to her and Defendant-Appellee, Douglas K. Heffelfinger ("Husband").  We affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}  Husband and Wife were married on August 2, 1992.  Throughout the marriage, Wife was employed as a flight attendant; Husband worked 60-70 hours per week for his parents on the family farm from the date of the marriage until 2009 when he became self-employed.  The parties lived on the family farm so they did not pay rent, utilities, or a mortgage.

{¶ 3} On April 18, 2023, Wife filed a complaint for divorce. A trial before a magistrate was held on September 24-27, and October 23, 2024. By a lengthy decision filed January 29, 2025, the magistrate granted the parties a divorce and divided their property. Wife filed objections. By judgment entry filed August 13, 2025, the trial court adopted the magistrate's decision with modifications. A lengthy final judgment entry – decree of divorce was filed on October 28, 2025.

{¶ 4} Wife filed an appeal with the following assignments of error:

I

{¶ 5} "A. THE TRIAL COURT'S DECISION FINDING THAT THE INCREASE IN VALUE, OR EQUITY, OF THE FARM REAL ESTATE DURING THE MARRIAGE OF $7,462,500, PLUS THE INCREASE IN VALUE, OR EQUITY, OF THE MERCHANTABLE TIMBER DURING THE MARRIAGE OF $472,835.48, WAS NOT DUE TO THE COMBINED LABOR, MONEY, AND IN-KIND CONTRIBUTIONS OF APPELLANT (PHYLLIS) AND APPELLEE (DOUGLAS) DURING THE MARRIAGE IS CONTRARY TO LAW."

{¶ 6} "B. IN THE ALTERNATIVE, THE TRIAL COURT'S DECISION FINDING THE INCREASE IN VALUE OR EQUITY OF THE FARM REAL ESTATE, INCLUDING THE MERCHANTABLE TIMBER, WAS PASSIVE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. APPELLEE (DOUGLAS) HAD THE BURDEN OF PROVING THAT THE INCREASE IN VALUE WAS PASSIVE, AND DOUGLAS FAILED TO SUSTAIN HIS BURDEN OF PROOF."

II

{¶ 7} "A. THE TRIAL COURT'S DECISION FINDING THAT THE LIFE INSURANCE DEATH BENEFITS PAID DURING THE MARRIAGE FROM THE IRREVOCABLE LIFE INSURANCE TRUSTS, WHICH REMAINED IN VARIOUS BANK ACCOUNTS AND INVESTMENT ACCOUNTS OR WERE TRACED TO SPECIFIC ASSETS AT THE TIME OF TRIAL, ARE THE SEPARATE ASSETS OF APPELLEE (DOUGLAS) IS CONTRARY TO LAW."

{¶ 8} "B. IN THE ALTERNATIVE, THE TRIAL COURT'S DECISION AWARDING APPELLEE (DOUGLAS) THE BANK ACCOUNTS, INVESTMENT ACCOUNTS, AND ASSETS FUNDED BY THE LIFE INSURANCE DEATH BENEFITS IN THE SUM OF $986,165.29 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

III

{¶ 9} "A. THE TRIAL COURT'S DECISION FINDING THAT THE 50% SHARE OF THE CROPS IN THE FIELDS THAT WERE READY FOR HARVEST AT THE TIME OF TRIAL WAS LIMITED TO 50% OF THE NET PROFIT OF THOSE CROPS, AFTER DEDUCTING THE COST OF GROWING THE CROPS, IS CONTRARY TO LAW."

{¶ 10} "B. IN THE ALTERNATIVE, THE TRIAL COURT'S DECISION ORDERING AN ACCOUNTING AND LIMITING THE 50% SHARE OF THE VALUE OF THE CROPS IN THE FIELDS AT THE TIME OF TRIAL TO THE NET PROFIT DERIVED FROM THE SALE OF THOSE CROPS, AFTER DEDUCTING THE COST OF GROWING THE CROPS, IS AGAINST THE MANIFEST WEIGHT OF THE

EVIDENCE. ALL CROP EXPENSES FOR THE 2024 CROPS WERE PREPAID PRIOR TO THE TIME OF TRIAL AND ALL THAT REMAINED WAS THE HARVEST OF THE CROPS WITH A STIPULATED VALUE OF $338,839.97."

APPLICABLE LAW

{¶ 11} In divorce proceedings, a trial court "shall divide the marital and separate property equitably between the spouses" in accordance with R.C. 3105.171(B). The trial court shall "determine what constitutes marital property and what constitutes separate property." *Id.* Marital property includes all "real and personal property that currently is owned by either or both of the spouses" and can include "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(i) and (iii).

{¶ 12} R.C. 3105.171(A)(6)(a) defines "separate property" as including in part:

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

. . .

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

{¶ 13} "Passive income" is defined as: "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4). "Appreciation of separate property 'due solely to market forces, such as location and inflation' is passive appreciation and remains separate property." *Gregory v. Falcon,* 2023-Ohio-1741, ¶ 35 (5th Dist.), quoting *Sterbenz v. Sterbenz,* 2004-Ohio-4577, ¶ 5 (9th Dist.). The party arguing passive appreciation and therefore separate property bears the burden of proof. *Tochtenhagen v. Tochtenhagen,* 2010-Ohio-4557, ¶ 45 (11th Dist.).

{¶ 14} "There is a presumption in Ohio that an asset acquired during the course of the marriage is marital property, unless proved otherwise." *Salameh v. Salameh*, 2019-Ohio-5390, ¶ 28 (5th Dist.), citing *Haven v. Haven*, 2012-Ohio-5347, ¶ 23 (5th Dist.). "The characterization of property as separate or marital is a mixed question of law and fact, and the trial court's ruling must be supported by sufficient credible evidence." *Altier v. Altier*, 2015-Ohio-1526, ¶ 21 (5th Dist.). "The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Id.* This court will not disturb the trial court's ruling as being against the manifest weight of the evidence if some competent, credible evidence supports the trial court's judgment. *Howcroft v. Howcroft,* 2010-Ohio-6410, ¶ 57 (5th Dist.), citing *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279 (1978). In *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the

other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief*."  (Emphasis in original.)

{¶ 15} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings.  *Eastley v. Volkman,* 2012-Ohio-2179.  "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *Seasons Coal Co. v. Cleveland,* 10 Ohio St. 3d 77, 80 (1984)*; accord Eberly v. Eberly,* 2026-Ohio-2262, ¶ 31.

{¶ 16} As an appellate court, we generally review a trial court's property division in divorce proceedings under an abuse of discretion standard.  *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981); *accord Martin v. Martin,* 18 Ohio St.3d 292, 294-295 (1985).  "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable.  *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985).  Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.  *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161 (1990).  An unreasonable decision is one backed by no sound reasoning process which would support that decision.  *Id.*  "It is not enough that the reviewing court, were it deciding

the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 17} We will review Wife's arguments under these standards of review.

I

{¶ 18} In Wife's first assignment of error, she challenges the trial court's findings that the increase in value and/or equity in the farm real estate and merchantable timber was not due to the combined labor, money, and in-kind contributions of both parties during the marriage and that the increase was passive. We disagree with Wife's arguments.

{¶ 19} Wife does not contest the farm real estate as being Husband's separate property, but argues her contributions to the farm property and its appreciation in value should be deemed marital property. She argues she paid for all of the family expenses with her income and provided health insurance so Husband could funnel any monies he made back to the farm operation; he did not have to borrow money or incur debt to operate the farm.

{¶ 20} The magistrate heard testimony from Husband's real estate expert, Paul Baumberger, and Wife's real estate expert, Charles Snyder. Wife also presented the testimony of a financial expert, Harry Joseph Armstrong, and a forestry expert, Vincent DeFelice.

{¶ 21} Baumberger opined in his report that the real estate had a current value of $10,771,000.00 and the value increased by $6,053,500.00 during the marriage. Husband's Exhibits N.1 and O-BB. He opined any increased value to the real estate over the length of the marriage because of improvements amounted to $210,587.00; he provided an itemized list of improvements. Husband's Exhibit N.3. The trial court determined the $210,587.00 amount was a marital asset. October 28, 2025 Judgment Entry – Decree of Divorce at 13.

{¶ 22} Snyder opined in his report that the real estate had a current value of $11,723,000.00 and the value increased by $7,462,500.00 during the marriage. Wife's Exhibit 10.f(1). He opined the cause for the increase in value was due to "market price escalation," not improvements made to the real estate. T. at 185-187. He also opined a select cut of marketable timber would "keep the property value stable"; it would not negatively impact the value of the property. T. at 192.

{¶ 23} Armstrong testified Wife's financial contributions to the marriage ($1,860,122.00) permitted Husband to operate the farm even though the farm did not have any positive income for eleven years and a negative cash flow of $157,631.00 over the eleven-year period. T. at 137-339, 349, 358; Wife's Exhibit 10.a. Armstrong acknowledged he was unaware in which account Wife deposited her earnings, but any third-party contributions to operate the farm did not come from Wife. T. at 354-355, 358-359, 362. Wife testified she deposited her income into an account in her sole name and paid her expenses from that account, and did not pay for any farm expenses. T. at 511, 723.

{¶ 24} DeFelice opined in his report the marketable timber on the property had a current value of $890,460.45; the increase in the value of the timber during the marriage was $472,835.48. Wife's Exhibit 10-e. But DeFelice admitted all the trees on the property are natural trees except for one area that could have been planted trees at some point. T. at 453-454. DeFelice opined the planted portion appeared to be 50 to 60 years old which would have been prior to the parties' marriage. T. at 455-456.

{¶ 25} The trial court analyzed the evidence on these issues at length. August 13, 2025 Judgment Entry at 6-9; October 28, 2025 Judgment Entry – Decree of Divorce at 9-13, 14-15. The trial court essentially determined none of Wife's experts provided evidence that any

combined labor, money, and in-kind contribution by Wife caused the increase in the value of the real estate or merchantable timber.

{¶ 26} Given the cited evidence, we find the trial court's findings are supported by the weight of the evidence and are not contrary to law. We do not find a manifest miscarriage of justice nor an abuse of discretion.

{¶ 27} Assignment of Error I is denied.

II

{¶ 28} In Wife's second assignment of error, she challenges the trial court's finding that the life insurance death benefits paid during the marriage were Husband's separate assets. We disagree with Wife's arguments.

{¶ 29} On October 22, 1993, Husband's parents executed a joint irrevocable life insurance trust during their lifetimes for the benefit of Husband, Husband's sister, and her two children. Wife's Exhibit 7.b. Approximately two months later, Husband, Wife, their one child, Husband's sister, her husband, and their two children executed "Crummey Letters" to fund the life insurance trust. T. at 537-538; Wife's Exhibit 7.b. Crummey Letters are used for tax purposes to inform beneficiaries of an irrevocable trust that a gift has been made to the trust and they have a short temporary right to withdraw those funds; most beneficiaries do not remove any funds. McCarthy Law, LLC, *Crummey Trusts: Do You Really Need One to Preserve the Gift Tax Exclusion?,* https://www.mccarthylawri.com/crummey-trust/ (accessed July 2026); *see Crummey v. Commissioner,* 397 F.2d 82 (9th Cir. 1968). If the Crummey Letters had not been executed, no life insurance proceeds would have existed at the time of Husband's parents' deaths. T. at 537-538, 656-658.

{¶ 30} On June 17, 1997, Husband's parents executed new separate irrevocable life insurance trusts which were purchased with surrendered money from the 1997 joint life insurance trust. Husband's Exhibits KKK and LLL; Wife's Exhibits 7.c, 7.d, 16.m(1), 16.m(3), and 16.m(5). The 1997 trusts were funded by Husband's parents and the Crummey Letters which waived any right to withdraw any contributions in order for insurance benefits to be paid. Husband, Wife, and their two children were listed as beneficiaries in the new trusts, but Wife and children would receive funds only if Husband predeceased Wife and children. Husband's sister and family were not included as beneficiaries.

{¶ 31} Husband's father died in September 2012 and his mother died in February 2017; each time Husband received substantial amounts of money. T. at 122-123, 405, 996; Wife's Exhibits 16.m(4) and 16.m(5). The life insurance proceeds were placed into three different accounts and were used to purchase a farm combine and accessories (Park National Account Nos. 8165 and 8162, Nationwide Life Insurance Account No. 8570). T. at 405-406, 954-960, 962-964; Wife's Exhibits 11.d, 11.e, and 16.a; Husband's Exhibits A.2, F, RR, VV, WW.2, XX.1., XX.2, YY, ZZ, AAA.1, and AAA.2. Husband testified he purchased the combine with the life insurance money he received. T. at 323, 406-407, 922. The three accounts and the farm purchases totaled $986,165.29 which were awarded to Husband. Wife argues the premiums for the life insurance policies and all the death benefits were paid during the marriage and therefore, the full amount of $986,165.29 should be divided equally between the parties. Appellant's Brief at 25. Wife did not cite to any case law in support of her arguments.

{¶ 32} The magistrate painstakingly traced the monies from the irrevocable life insurance trusts to the three accounts and the farm purchases (which we decline to rewrite herein) and declared the monies and purchases to be Husband's separate property. *See*

January 29, 2025 Decision at 19-20, 28-30, 32-34, 35; Husband's Exhibits F, RR, VV, WW.1, WW.2, XX.1, XX.2, YY, ZZ, AAA.1, AAA.2.

{¶ 33} Wife objected to the magistrate's finding that the proceeds from Husband's parents' irrevocable trusts were Husband's separate property.  In denying the objection, the trial court stated:

> Plaintiff is arguing that because the 1993 trust was funded by a gift of money to Plaintiff, who then gifted the money back to the trust, that the proceeds of Harley and Helen's life insurance are marital and should be divided equally.  Plaintiff was one of the listed beneficiaries of the 1997 trusts during the lifetime of Harley and Helen.  However, Defendant was the sole beneficiary of the trust/life insurance funds upon the death of Harley and Helen respectively, unless Defendant predeceased Plaintiff.  As Plaintiff did not withdraw the funds when given the opportunity, and the benefit of the policy and trust vested following the deaths of Harley and Helen, the Court does not find Plaintiff's argument well-taken.

*See* August 13, 2025 Judgment Entry at 4-5.

{¶ 34} The trial court thoroughly reviewed and analyzed this issue in its October 28, 2025 Judgment Entry – Decree of Divorce at 20, 29-30, 32-35.  The trial court concluded Husband traced the challenged assets to his separate property by a preponderance of the

evidence, meeting his burden of proof. The Crummey Letters did not affect Husband's inheritance from the irrevocable life insurance trusts as noted by the trial court, cited above.

{¶ 35} In reviewing the magistrate's decision, the judgment entry on objections, the judgment entry – decree of divorce, and the testimony and listed exhibits presented at the hearing, we find the trial court's findings are supported by the weight of the evidence and are not contrary to law. We do not find a manifest miscarriage of justice.

{¶ 36} Assignment of Error II is denied.

III

{¶ 37} In Wife's third assignment of error, she challenges the trial court's finding that her 50% share of the crops in the fields that were ready for harvest at the time of trial was limited to 50% of the net profit of those crops, after deducting the costs for growing the crops. We disagree with Wife's arguments.

{¶ 38} Wife objected to the magistrate omitting the division of the crops growing in the fields. In its judgment entry filed August 13, 2025, the trial court granted Wife's objection on the crops yet to be harvested, stating the following:

> The Court finds that the value of the 2024 crop of soybeans and corn should be divided equally between the parties. At this point, the crops should be harvested and either in grain bins, on a delayed pricing contract ("DP") at Centerra or otherwise have been sold. Thus, the value of the crops should no longer be speculative. Defendant shall provide an accounting to Plaintiff of the actual income derived from the 2024 crops, *less the cost to grow the crops,* and shall pay Plaintiff one-half of that profit within 30 days of final decree in this case.

This Court shall retain jurisdiction to enforce this portion of the decision. (Emphasis added.)

{¶ 39} Wife argues Husband prepaid the expenses to grow the crops so she was entitled to 50% of the crops harvested and sold by Husband after the time of trial. In support, Wife argued the following in her appellate brief at 27:

> The expenditures testified to at the time of trial and confirmed by Douglas evidencing the cost of growing these same crops were all paid from the farm account (#9438) resulting in the low balance of this marital asset of $44,191.84 at the time of trial (Tr. Ex. 11-f(l)).
>
> . . .
>
> Douglas admitted the prepayment of the crop expense (T. 317-318). Thus, the grain (soybeans and corn) still in the fields ready for harvest at the time of trial had a value of $338,839.97. There is no evidence in this record justifying the second deduction of the crop expenses as those expenses had already been paid from the farm account reducing that farm account to the low balance of $44,191.84.

{¶ 40} No transcript pages are cited to support the statement "[t]he expenditures testified to at the time of trial and confirmed by Douglas evidencing the cost of growing these same crops were all paid from the farm account . . . ." The cited exhibit, Wife's Exhibit 11.f(1), are statements of an interest checking account labeled "Farm Account" with cancelled checks written for various farm expenses. The transcript pages that are cited, 317-318, is where

Husband testified that he does not prepay for all of the expenses for his crops until the end of the year; this testimony was elicited during the September 25, 2024 hearing. We do not find any evidence of expenditures already paid by Husband to grow the crops.

{¶ 41} Wife presented the testimony of her crop expert, David Acker. Acker opined the value of the crops in the field ready to be harvested was $352,295.17. T. at 108; Wife's Exhibit 10-d. He explained any high moisture corn on the farm is normally used to feed livestock and is not sold. T. at 105, 112-113. This was corroborated by a fellow farmer, Jad Augustine. T. at 290-291. Acker admitted the amount for the crops in the field is just an estimate "because you really don't know how much is there" until it is harvested. T. at 103, 107, 111. At the time of the September 27, 2024 hearing, the 2024 corn and soybean crops had yet to be harvested. T. at 895-896.

{¶ 42} In the August 28, 2025 Judgment Entry – Decree of Divorce, the trial court stated:

> The Court finds that the value of the 2024 crop of soybeans and corn should be divided equally between the parties. At this point, the crops should be harvested and either in grain bins, on a delayed pricing contract ("DP) at Centerra or otherwise have been sold. Thus, the value of the crops should no longer be speculative.
>
> Douglas shall provide an accounting to Phyllis of the actual income derived from the 2024 corn and soybeans, less the cost to grow the crops, and shall pay Phyllis one-half of that profit within 30 days of filing this Decree of Divorce.

This Court shall retain jurisdiction to enforce this portion of the Decree of Divorce.

{¶ 43} Wife concluded her argument by stating: "Thus, Phyllis is entitled to one-half of the value of the soybeans and corn sold by Douglas or deposited in the farm grain bins by Douglas after the time of trial. The deductions from that sale price or harvest price must be limited to any documented expenses incurred by Douglas pertaining to these crops in the field after the close of the evidence." Appellant's Brief at 28.

{¶ 44} The trial court has retained jurisdiction on the crops yet to be harvested. Husband is required to provide an accounting of his expenses pertaining to these crops. If Husband submits a "double accounting" for growing the crops as argued by Wife, then Wife can contest the accounting at that time.

{¶ 45} Assignment of Error III is denied.

{¶ 46} For the reasons stated in our accompanying Opinion, the judgment of the Ashland County Domestic Relations Court is AFFIRMED.

{¶ 47} Costs to Appellant.

By: King, P.J.

Hoffman, J. and

Montgomery, J. concur.